210 P.3d 995 (2009)
Eufemia "Emma" MORGAN, Nancy Pitchford and Daniel McGillivray, individually and behalf of all the members of the class of persons similarly situated, Respondents,
v.
Gerald KINGEN and Jane Doe Kingen, husband and wife and the marital community comprised thereof, Scott and Jane Doe Switzer, and the marital community comprised thereof, Petitioners.
No. 81202-1.
Supreme Court of Washington, En Banc.
Argued January 20, 2009.
Decided July 2, 2009.
*996 William Keller McInerney, Jr., WK McInerney PLLC, Seattle, for Petitioners.
Claudia Kilbreath, Short Cressman & Burgess PLLC, Seattle, for Respondents.
Kristopher Ian Tefft, Amicus Curiae on Behalf of Association of Washington Business; National Federation of Independent Business Legal Foundation; Recreational Gaming Association of Washington; Washington Contract Loggers Association; Washington Food Industry; Washington Restaurant Association; Washington Retail Association; Washington State Farm Bureau Federation.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether financial status, specifically bankruptcy under chapter 7 liquidation, is a valid defense to negate the finding of a willful failure to pay wages owed to employees. RCW 49.52.050 and RCW 49.52.070 respectively set out the criminal and civil penalty mandated where any employer or officer, vice principal, or agent of any employer willfully and with intent deprives the employee of any part of his or her wages. In Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 961 P.2d 371 (1998), we held financial status does not negate a finding of willfulness. Neither this court nor the legislature has altered that interpretation or the statute. Here, consistent with our holding in Schilling, the trial court ruled financial status is not a defense to a finding of willfulness. In accord with RCW 49.52.070 (imposing civil liability), the trial court awarded exemplary damages, costs, and a reasonable sum for attorney fees. The class cross-appealed the award of attorney fees because, among other things, the trial court did not award a multiplier to the class. The Court of Appeals affirmed the trial court's ruling. We now affirm the Court of Appeals.

*997 FACTS
¶ 2 During the summer of 2001, Gerald Kingen and Scott Switzer established Funsters Grand Casino, Inc., a minicasino located in SeaTac, Washington. Kingen controlled a 31 percent interest in Funsters, and Switzer held 7 percent. As CEO (chief executive officer) and president, Kingen set compensation for senior employees and possessed authority to hire and fire employees. As CFO (chief financial officer) and general manager, Switzer managed, among other things, Funsters' finances. Both Kingen and Switzer controlled the payment of wages to employees, which included authority to prioritize payment of wages and other corporate obligations (e.g., creditor payments).
¶ 3 Though Funsters was in poor financial condition to begin with, Kingen and Switzer opened its doors for business in August 2001. One year later, Funsters voluntarily filed for protection under chapter 11 of the United States Bankruptcy Code. Under chapter 11, Kingen and Switzer continued to operate the minicasino as debtor-in-possession. Because of a continued decline in Funsters' financial viability, the United States trustee in the bankruptcy proceeding moved to convert or dismiss the chapter 11 proceeding. During the hearing on the motion, Kingen and Switzer made clear their unwillingness to inject additional capital sufficient to satisfy unpaid debts, including wages owed. In response, the bankruptcy court converted the matter to chapter 7 liquidation on April 7, 2003.
¶ 4 Prior to the conversion, Funsters' employees earned wages that went unpaid for two pay periods: March 10 to 23, 2003, and March 24 to April 6, 2003. The total unpaid wages for these pay periods exceeded $179,000. As part of the conversion to chapter 7, the bankruptcy trustee seized Funsters' assets. These assets included $85,823.23 in cash. The bankruptcy court did not permit the unpaid wages to be satisfied from the seized funds.
¶ 5 Following the conversion, Eufemia Morgan, Nancy Pitchford, and Daniel McGillivray (collectively "Morgan") filed this class action on their behalf and that of over 180 other former employees to recover the unpaid wages. Based on RCW 49.52.050 and RCW 49.52.070, they sought personal liability against Kingen and Switzer.
¶ 6 The trial court granted summary judgment to Funsters' employees holding Kingen and Switzer personally liable, and, pursuant to RCW 49.52.070, it awarded exemplary damages, costs, and reasonable attorney fees to the class. In awarding attorney fees, the trial court did not award a multiplier to the class. The Court of Appeals affirmed the summary judgment but remanded the case to the trial court with directions concerning the award of attorney fees below and on appeal. Kingen and Switzer's petition for review was granted. The class' petition for review of the cross appeal was also granted.

ISSUES
(i) Under RCW 49.52.070, is financial status (i.e., chapter 7 bankruptcy) a sufficient defense to avoid personal liability when a party responsible for the payment of wages failed to pay wages owed to its employees?
(ii) Was the trial court's refusal to award a multiplier to the class an abuse of discretion?

ANALYSIS
¶ 7 The grant of summary judgment is appropriate where there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one that affects the outcome of the litigation." Owen v. Burlington N. & Santa Fe R.R., 153 Wash.2d 780, 789, 108 P.3d 1220 (2005). Where no dispute as to the material facts exists, summary judgment is proper.
¶ 8 Here, the trial court granted summary judgment in favor of Morgan and the class of employees, holding Kingen and Switzer personally liable for the employees' unpaid wages under RCW 49.52.070. Kingen and Switzer contend they did not willfully fail to pay employee wages with the intent to deprive, under RCW 49.52.050 (referenced within RCW 49.52.070).
¶ 9 In an action for unpaid wages, it must be determined whether the failure to pay was willful and done with the intent to deprive the employee of wages owed. Schilling, *998 136 Wash.2d at 159, 961 P.2d 371. RCW 49.52.070 provides the civil remedy where the failure to pay wages owed was willful:
Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of [RCW 49.52.050(1) and (2)] shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.
¶ 10 RCW 49.52.050 provides that where "[a]ny employer or officer, vice principal or agent of any employer ... who ... (2)[w]ilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract."
¶ 11 In Schilling, we had occasion to interpret these statutes. There, we held willfulness is found where "the employer's refusal to pay [is] volitional.... Willful means `merely that the person knows what he is doing, intends to do what he is doing, and is a free agent.'" 136 Wash.2d at 159-60, 961 P.2d 371 (internal quotation marks omitted) (quoting Brandt v. Impero, 1 Wash.App. 678, 681, 463 P.2d 197 (1969)). Where an employer fails to pay wages owed, our cases have thus far established two instances that negate a finding of willfulness: "the employer was careless or erred in failing to pay, or a `bona fide' dispute existed between the employer and employee regarding the payment of wages." Schilling, 136 Wash.2d at 160, 961 P.2d 371; see also Pope v. Univ. of Washington, 121 Wash.2d 479, 490, 852 P.2d 1055 (1993) (holding the lack of intent to deprive may be established by a finding of carelessness or a bona fide dispute).
¶ 12 Here, neither party argues that any employee knowingly submitted to the alleged failure to pay wages owed, which would satisfy the legislative exception in RCW 49.52.050(2). Further, neither party argues that carelessness or a "bona fide" dispute caused the failure to pay wages owed. Instead, Kingen and Switzer argue that chapter 7 bankruptcy should be recognized as a defense to negate the finding of willfulness.
¶ 13 Specifically, Kingen and Switzer argue that the bankruptcy court's decision to convert Funsters' chapter 11 reorganization proceeding to a chapter 7 liquidation proceeding took away any choice they may have possessed and their (and Funsters') ability to be willful in failing to pay wages owed. But the statute and our cases do not support this claim.
¶ 14 In Schilling, Robert Bingham was the president and shareholder of Radio Holdings, Inc. The parties in Schilling did not dispute that Radio Holdings paid Schilling less than what it owed her or that Bingham was aware of the unpaid wages. Instead, Bingham argued he was financially unable to pay the wages. We rejected this argument noting the absence of any published case where a court held financial status is a means to negate a finding of willfulness. In Schilling, we held financial inability of an employer to pay wages owed is not a defense to avoid personal liability.
¶ 15 Here, despite its constant financial difficulties, Kingen and Switzer continued to operate Funsters before and during the chapter 11 proceedings. Under their control, Kingen and Switzer made payroll decisions and determined which bills and obligations would be paid and when. Before the conversion from chapter 11 to chapter 7, Kingen and Switzer allowed unpaid wages for two pay periods to accrue in excess of $179,000. Kingen and Switzer do not dispute these facts.[1] Rather, they suggest the failure to pay these wages was beyond their control.
*999 ¶ 16 To support this claim of a lack of control over payment of wages, Kingen and Switzer rely on Ellerman v. Centerpoint Prepress, Inc., 143 Wash.2d 514, 22 P.3d 795 (2001). But Ellerman is inapposite. The issue in Ellerman was whether Centerpoint's business manager was a "vice principal" or "agent" under the meaning of the wage claim statutes. Because the court found the business manager not to be a vice principal or agent, she lacked control over the payment of wages and was, therefore, not personally responsible.
¶ 17 Here, Kingen and Switzer argue the payment of wages was beyond their control because the bankruptcy trustee froze Funsters' assets and would not permit the payment of wages with the frozen assets. But this fact does not help them. Kingen (Funsters' president and CEO) and Switzer (Funsters' general manager and CFO) both had authority over the payment of wages. And the wages owed were accrued prior to the chapter 7 conversion. As such, Ellerman does not support a lack of control defense for Kingen and Switzer, nor does it negate the personal liability imposed under the statute.
¶ 18 RCW 49.52.070 provides, "[a]ny employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee ...." (emphasis added). The use of "and" is conjunctive and establishes the statutory directive to hold personally liable the party responsible for paying wages who willfully failed to pay wages owed. With respect to personal liability, this conjunctive language makes the corporation's insolvency irrelevant to liability. If the failure to pay wages owed was willful, the party responsible for the payment of wages may be personally liable in accord with RCW 49.52.070. In other words, bankruptcy of the corporation is not a means to escape personal liability by those who failed to pay wages owed.
¶ 19 The legislature intended, under RCW 49.52.070, to impose personal liability on the officers in cases like this because the officers control the financial decisions of the corporation. There are many examples that highlight the need for such risk of personal liability. The officers decide whether to pay one debt over another (e.g., wages). The officers have the choice to file bankruptcy or, say, close the business and pay its debts (including wages). The officers decide whether to continue running an inadequately capitalized corporation while hoping for a change in financial position. In other words, the officers control the choices over how the corporation's money is used, and (in cases of unpaid wage claims) RCW 49.52.070 imposes personal liability when the officers choose not to pay wages owed. Such a choice is willful and intentional.
¶ 20 Further, in Schilling, we contemplated whether bankruptcy would be enough of a reason to negate a finding of willfulness. There, Bingham "claim[ed] that if he had declared bankruptcy, the employees would not have received any back wages." Schilling, 136 Wash.2d at 164, 961 P.2d 371. We responded, "Bingham has never specifically proved he or Radio Holdings were insolvent or financially unable to pay." Schilling, 136 Wash.2d at 164, n. 5, 961 P.2d 371 (emphasis added). Although such response was unnecessary to our holding, the footnote suggests that a corporation's insolvency does not negate a finding of willfulness, especially where the corporate officer is financially solvent.
¶ 21 Similar to Schilling, the facts of this case do not suggest Kingen's or Switzer's inability to satisfy personally the debt of unpaid wages owed. Kingen and Switzer voluntarily took Funsters into chapter 11 reorganization. But prior to the conversion to chapter 7 liquidation, the bankruptcy court gave Kingen and Switzer an opportunity to infuse capital sufficient to satisfy its debts (to include wages owed) and keep operating Funsters. Kingen and Switzer refused. This refusal was the reason the bankruptcy court converted the proceeding from chapter 11 debtor-in-possession to chapter 7 liquidation. Clerk's Papers at 309-10. This act of refusal is a willful business decision by Kingen and Switzer that caused the wages owed to remain unpaid. Because Kingen's and Switzer's failure to pay wages owed was willful, they are personally liable. Several examples of business decisions that cause a *1000 business to become insolvent are helpful here: the officers could decide to (i) run an undercapitalized business, (ii) engage in excessive expenditures, (iii) hire too many employees, or (iv) divert revenue to other purposes, etc. But none of these possible officer decisions are defensible under the statute. The business decisions that create the insolvency are volitional under the statute.
¶ 22 The statute establishes a strong policy in favor of ensuring the payment of the full amount of wages earned. The enactment of both a criminal and civil penalty for the willful failure to pay wages earned evidences that strong policy. See Schilling, 136 Wash.2d at 157, 961 P.2d 371. Where liability is found, the civil remedy is personal liability for exemplary damages and attorney fees.
¶ 23 In contrast, Kingen and Switzer assert their own policy argument. They contend a refusal to expand the set of defenses that negate a finding of willfulness will cause "decision-makers for businesses in financial distress [to] be justifiably deterred from attempting to prevent liquidation or preserve the jobs of their employees." Pet'rs' Petition for Review at 6. Amici Curiae (in support of Kingen and Switzer) make a similar policy argument. Amici argue our refusal to expand the set of defenses to include chapter 7 liquidation will have a chilling effect on entrepreneurship in Washington. Amici Curiae Mem. of Seven Statewide Business Groups Supporting the Petition for Review at 9-10. But neither Kingen and Switzer nor amici present adequate support for their policy arguments.
¶ 24 The policy behind wage payments in Washington controls here. The payment of wages holds a preferential statutory position, highlighted by the imposition of personal liability for exemplary damages, costs, and reasonable attorney fees as a penalty for the willful failure to pay wages owed. See RCW 49.52.070. As such, we decline to expand the defenses to negate a finding of willfulness to include financial status, specifically chapter 7 liquidation.

AWARDING THE CLASS A MULTIPLIER
¶ 25 Below, Morgan cross-appealed the trial court's refusal to, among other things, award a multiplier to the class. Morgan contended the trial court abused its discretion when it denied the request for the award of a multiplier. The Court of Appeals affirmed the trial court on this issue. Here, Morgan has reasserted these same arguments.
¶ 26 We review the amount of a fee awarded by a trial court for an abuse of discretion. The amount will be overturned only for manifest abuse. Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 597, 675 P.2d 193 (1983). As such, we must give deference to the trial court's decision.
¶ 27 RCW 49.52.070 provides for the award of reasonable attorney fees and costs for employees who prevail in a wage claim civil action. To determine the appropriate attorney fees, the trial court begins by figuring out the lodestar (total number of hours reasonably expended, multiplied by the reasonable hourly rate of compensation). After the lodestar figure is calculated, the court may consider a contingency adjustment based on additional factors. Chuong Van Pham v. Seattle City Light, 159 Wash.2d 527, 541, 151 P.3d 976 (2007). The party requesting the contingency adjustment bears the burden of justifying its imposition. The reasoning behind contingency adjustments is that attorneys will not take high-risk contingency cases where a risk of zero recovery is present, unless they can collect a premium for doing so. Courts consider requests for a contingency adjustment based on (i) the contingent nature of success and (ii) the quality of work performed.
¶ 28 A trial court considers the contingent nature of success at the outset of the litigation. "'This is necessarily an imprecise calculation and must largely be a matter of the trial court's discretion.'" Chuong Van Pham, 159 Wash.2d at 542, 151 P.3d 976 (emphasis omitted) (quoting Bowers, 100 Wash.2d at 598, 675 P.2d 193). The quality of work performed category is generally limited because this factor is typically *1001 reflected already when the court assesses the reasonable hourly rate in determining the lodestar figure. A trial court awards a contingency adjustment "`solely to compensate for the possibility ... that the litigation would be unsuccessful and that no fee would be obtained.'" Bowers, 100 Wash.2d at 598-99, 675 P.2d 193 (alternation in original) (quoting Copeland v. Marshall, 641 F.2d 880, 893 (D.C.Cir.1980)).
¶ 29 Here, Morgan sought a contingency adjustment (multiplier) based on both categories. The trial court concluded this wage claim case did not involve the usual risk associated with contingent fee cases:
[T]his was a law suit in which the basic core fact of unpaid wages was clear, in some amount, and the defendants being pursued for this statutory remedy were easily determined (plaintiffs' counsel checked their financial status out) to be well capable of collecting a judgment from in terms of their personal wealth. It would seem the usual risk factor of a contingent fee [case] is absent in this case.

Clerk's Papers at 1410 (emphasis added).
¶ 30 This excerpt and the fact that the trial court entered summary judgment in this matter establish that the trial court did consider the contingent nature of success in this case at the outset of litigation. We agree with the Court of Appeals that any risk associated with the contingent nature of this case was substantially reduced by the entry of summary judgment. Further, the hourly rates determined by the trial court, used to establish the lodestar figure, sufficiently compensate for the quality of the work performed. As such, we hold the trial court did not abuse its discretion in denying the class the award of a multiplier.

CONCLUSION
¶ 31 We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, SUSAN OWENS, BARBARA A. MADSEN, DEBRA L. STEPHENS, Justices.
TOM CHAMBERS, Justice, concurs in result only.
SANDERS, J. (dissenting).
¶ 32 The majority holds that Gerald Kingen and Scott Switzer willfully failed to pay their employees when the bankruptcy court converted Funsters Grand Casino's chapter 11 reorganization to chapter 7 liquidation, thereby seizing Funsters' assets and not permitting unpaid wages to be satisfied. Majority at 997, 999. The majority fails to recognize chapter 7 bankruptcy as a defense to negate the finding of willfulness. Majority at 998. More importantly the majority fails to recognize that the issue here is willfulness and that a party must have some control and be a free agent to be willful. Therefore I dissent.
¶ 33 The majority incorrectly relies on Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 961 P.2d 371 (1998). In Schilling the employer was not in bankruptcy but chose to not pay his employees so he could pay off other debts. Id. at 155, 961 P.2d 371. When selling his business the employer promised the buyer that he would satisfy all debts, including past wages, by closing or the amounts still owed would be deducted from the sales price. Id. The employer set aside money to pay the past wages but then used some of it to settle a lawsuit, so he did not have enough money remaining to pay the employees. Id. at 156, 961 P.2d 371. When an unpaid employee brought suit, the employer argued he was financially unable to pay. Id. at 163-64, 961 P.2d 371. The court however held that the employer willfully and intentionally failed to pay his employees because he volitionally chose to pay creditors over employees. Id. at 165, 961 P.2d 371.
¶ 34 Here Kingen and Switzer did not choose to pay certain creditors over their employees. Instead the bankruptcy court seized all of the company's assets, not allowing them to pay their employees. They initially filed for chapter 11 bankruptcy, which would allow them to reorganize and pay their employees, but this was converted to chapter 7 liquidation by the bankruptcy court.
¶ 35 The majority incorrectly asserts that we previously suggested in Schilling "that a corporation's insolvency does not negate a finding of willfulness." Majority at 999. It *1002 comes to this conclusion because we said in Schilling that Bingham never proved insolvency or a financial inability to pay. Schilling, 136 Wash.2d at 164 n. 5, 961 P.2d 371. However we never reached the issue of whether insolvency negates willfulness. We merely asked, "[m]ust the employer be insolvent to the point of being eligible for bankruptcy to meet the test?" Id. at 164, 961 P.2d 371. But the question was never answered, and now we have an opportunity to do so.
¶ 36 The critical issue is whether an employer's failure to pay employees was willful under RCW 49.52.070. Id. at 159, 961 P.2d 371. Whether an employee acts willfully and with intent is a question of fact reviewed under the substantial evidence standard. Lillig v. Becton-Dickinson, 105 Wash.2d 653, 660, 717 P.2d 1371 (1986). As the dissent in Schilling articulated, "we should apply RCW 49.52.050(2) and .070 to the facts before us in a commonsense manner, uninhibited by prior decisions applying the term `willfully' in distinguishable factual circumstances." Schilling, 136 Wash.2d at 169, 961 P.2d 371 (Alexander, J., dissenting). The majority fails to do that.
¶ 37 Willful "means merely that the `person knows what he is doing, intends to do what he is doing, and is a free agent.'" Brandt v. Impero, 1 Wash.App. 678, 681, 463 P.2d 197 (1969) (quoting Davis v. Morris, 37 Cal.App.2d 269, 274, 99 P.2d 345 (1940)). "The nonpayment of wages is willful when it is the result of a knowing and intentional action." Lillig, 105 Wash.2d at 659, 717 P.2d 1371. The majority incorrectly holds that Kingen and Switzer willfully failed to pay their employees. In fact the assets of Funsters were seized, and they could not pay their employees even if they had wanted to pay them. The bankruptcy court's conversion of the proceeding negated Kingen's and Switzer's willingness to pay.
¶ 38 Kingen and Switzer are not asserting the defense of financial inability to pay. Instead they could not legally pay their employees after the bankruptcy proceeding was converted. Their failure to pay was not volitional or willful but rather court-imposed.
¶ 39 Therefore, I dissent.
WE CONCUR: JAMES M. JOHNSON, Justice and DENNIS J. SWEENEY, J. Pro Tem.
NOTES
[1] Although Kingen and Switzer argue that the payday for wages owed occurred after the conversion date, the first pay period of unpaid wages ended well before the conversion date. Further, even if we considered the payday date relevant, Funsters lacked adequate cash to pay the employees their earned wages when it entered chapter 7 liquidation (approximately $179,000 owed, but only $85,000 in cash available).