# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| UNIFUND, CCR, LLC, | ) | No. 73510-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMY ELYSE, | ) | PUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | FILED: July 18, 2016 |
| | ) | |

VERELLEN, C.J. — A debt collector seeking to enforce a written credit card agreement must prove the debtor's assent to the material terms of the agreement. The only cardholder agreement Unifund proffered in its action against Amy Elyse was a cardholder agreement issued in 2010. Unifund relies on use of the card in 2008 and a payment in 2009 to prove assent by conduct. But those acts do not establish assent to a document that did not exist until 2010.

The district court properly granted Elyse's motion for summary judgment and dismissed Unifund's claims. We reverse the superior court's judgment on RALJ appeal in favor of Unifund and award Elyse her attorney fees on appeal to both this court and the superior court.

## FACTS

The material facts are undisputed. Elyse opened a Citibank credit card account in October 2007.[1] The card was last used in July 2008. The last payment was made in November 2009. Citibank sold the account to Pilot Receivables Management in March 2013 with $1,910.11 due. Pilot sold the account to Unifund in July 2013.

In September 2013, Unifund sued Elyse in district court to recover unpaid credit card debt "for goods, services, and monies loaned" in the amount of $1,871.11 plus costs and interest.[2] After discovery, both parties moved for summary judgment.

Among the affidavits attached to Unifund's summary judgment motion was an affidavit of its records custodian, Joseph Doup. Doup's affidavit attached copies of 26 monthly account statements issued by Citibank from November 2007 to November 2009 and in May 2010. The statements were addressed to Elyse, showed the same account number, and detailed the purchases made. The November 2009 statement showed a balance of $1,456.77. The May 2010 statement showed a previous balance of $1,822.58 and a new balance of $1,871.11. Doup's affidavit also attached the "most recent" cardholder agreement for Elyse's account.[3] The agreement was neither signed nor dated. The agreement's first page states "© 2010 Citibank (South Dakota), N.A." and "3/10."[4]

---

[1] In July 2011, Citibank (South Dakota), N.A. merged with Citibank, N.A. We refer to issuer of the credit card account as Citibank.

[2] Clerk's Papers (CP) at 304-05.

[3] CP at 215, ¶ 11.

[4] CP at 252.

Elyse submitted her declaration stating that she had "no memory" and "no records" of receiving any credit card agreement from Citibank.[5]

At the summary judgment hearing, Unifund urged the district court to apply either South Dakota's six-year statute of limitations for any contract [6] or Washington's six-year statute of limitations for written contracts.[7] Unifund acknowledged that the only agreement it submitted in support of its argument was the 2010 cardholder agreement. The district court granted Elyse's motion for summary judgment and dismissed Unifund's action as barred by the Washington three-year statute of limitations applicable to oral contracts. The court noted Unifund's failure to produce a written credit card agreement in effect when Elyse's account was opened in October 2007. The court awarded Elyse attorney fees.

Unifund appealed to superior court. The superior court on RALJ appeal reversed the district court and entered a judgment in favor of Unifund. The court gave no reasoning for its decision. We granted Elyse's motion for discretionary review.[8]

## ANALYSIS

We review a summary judgment order de novo.[9] Summary judgment is proper if there are no genuine issues of material fact.[10] "'A material fact is one that affects the

---

[5] CP at 50, ¶ 2.

[6] South Dakota Codified Laws (SDCL) § 15-2-13.

[7] RCW 4.16.040(1).

[8] The Northwest Consumer Law Center, Northwest Justice Project, and Columbia Legal Services each filed an amicus curiae brief in this court.

[9] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

[10] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

outcome of the litigation.'"[11] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[12] Whether a claim is barred by a statute of limitations is a question of law we review de novo.[13]

We need not address the parties' arguments as to the admissibility of the documents Unifund offered on summary judgment under the business records act, chapter 5.45 RCW.[14] Even assuming the documents were properly admitted, Unifund failed to prove Elyse's assent to a written cardholder agreement.

---

[11] Morgan v. Kingen, 166 Wn.2d 526, 533, 210 P.3d 995 (2009) (quoting Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).

[12] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[13] Kelly v. Allianz Life Ins. Co. of North America, 178 Wn. App. 395, 398, 314 P.3d 755 (2013); Nieshe v. Concrete Sch. Dist., 129 Wn. App. 632, 638, 127 P.3d 713 (2005).

[14] Elyse and amici question the ability of an unaffiliated debt buyer to provide an adequate foundation for admission of card agreements and records created by the original creditor. Compare Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010) (card agreement properly admitted under business records act when employees of an *affiliated* entity that collected obligations for Discover Bank "collectively stated" that they had access to the Bridges' account records in the course of employment and made their statements based on personal knowledge and review of records made in the ordinary course of business) with State v. Weeks, 70 Wn.2d 951, 952, 425 P.2d 885 (1967) (third-party record of an out-of-state hospital inadmissible because records custodian lacked personal knowledge); see also Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases*, 6 J. BUS. & TECH. L. 259, 280 (2011) ("'A debt buyer's affidavit has no probative value when the affiant's claimed familiarity with the assignor's business records is derived solely from the affiant's review of those records after they came into the debt buyer's possession.'" (quoting NAT'L CONSUMER LAW CTR., COLLECTION ACTIONS 45 (1st ed. 2008 & Supp. 2010))); Midland Funding LLC v. Valentin, 40 Misc.3d 266, 966 N.Y.S.2d 656, 659 (2013) (An assignee's records custodian "almost always lacks the requisite knowledge to lay the proper foundation to establish the documents . . . are business records of the original creditor."); CACH, LLC v. Askew, 358 S.W.3d 58, 62-64 (Mo. 2012) (debt buyer's records custodian not qualified to lay foundation for business records rule when custodian had never worked for business that prepared the records and was not familiar with their preparation); Commonwealth Fin. Sys. v. Smith, 15 A.3d 492, 494-500 (Pa. Super. Ct. 2011) (affidavit

To establish a claim for the unpaid credit card debt, Unifund had to show that Elyse assented to a contract with Citibank by accepting the cardmember agreement and personally acknowledging the account.[15] Unifund failed to meet this burden. The only written contract Unifund proffered was the 2010 cardmember agreement. But Unifund failed to prove that Elyse assented to that agreement. Unifund did not produce a signed credit card agreement, a signed credit card application, or any other express written assent by Elyse to the terms of a specific credit card agreement. Nor did Unifund produce any cancelled checks evidencing Elyse's payments on the account.[16]

Unifund argued on summary judgment and here that Elyse assented to the 2010 agreement through her use of the credit card.[17] "The use of a credit card, if sufficiently

---

of assignee debt buyer's employee held inadmissible because there was no foundation testimony that the employee had personal knowledge of the "preparation and maintenance" of the account statements and purported card agreement); Palisades Collection LLC v. Kalal, 324 Wis.2d 180, 781 N.W.2d 503, 509-10 (Wis. Ct. App. 2010) (affidavit of assignee debt buyer's authorized representative held inadmissible because she had no personal knowledge of how the account statements were prepared and whether they were prepared in the ordinary course of the original creditor's business); Asset Acceptance v. Lodge, 325 S.W.3d 525, 528-29 (Mo. Ct. App. 2010) (testimony from assignee debt buyer's legal director held inadmissible because the employee had no personal knowledge of how or when the records were prepared and if the records were prepared in the ordinary course of business); Martinez v. Midland Credit Mgmt., Inc., 250 S.W.3d 481, 485 (Tex. App. 2008) (affidavit of assignee debt buyer's custodian of records held inadmissible because employee had no personal knowledge of the predecessor's recordkeeping practices); Simien v. Unifund CCR Partners, 321 S.W.3d 235, 244-45 (Tex. App. 2010) (third-party debt buyer's employee can authenticate documents it purchased despite having no personal knowledge or any other showing of reliability as to the original creditor's recordkeeping practices).

[15] Bridges, 154 Wn. App. at 727.

[16] A defendant may assent to an agreement's terms by personally acknowledging a credit card account "through evidence of cancelled checks or online payment documentation." Id.

[17] The 2010 agreement provided that use of the credit card constituted acceptance of the terms of the agreement: "This Card Agreement is your contract with us. It governs the use of your card and account. . . . You agree to use your account in

detailed and itemized, constitutes acceptance of terms clearly stated in a cardmember agreement."[18] In order to prove Elyse's assent to the terms of the 2010 cardmember agreement by use of a credit card, Unifund had to document Elyse's use of a credit card when governed by that specific agreement. But Elyse could not have assented to the terms of the 2010 cardholder agreement by her conduct since her credit card was last used in July 2008 and the last payment was made on the card in November 2009. Therefore, Unifund did not prove Elyse assented to the terms of the 2010 cardmember agreement and failed to prove the existence of a written contract on which its claim against Elyse for unpaid credit card debt could be based.

And, contrary to Unifund's argument, this does not equate to a requirement to submit every version of a credit card agreement that applied during the period the account was open. Rather, a debt collector relying on assent by conduct in the form of continuing use of a credit card proves assent to the version of the card agreement in existence at the time of the card's most recent use.

---

accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account with 30 days after receiving the card and you have not used or authorized use of the card." CP at 252.

[18] American Exp. Centurion Bank v. Stratman, 172 Wn. App. 667, 673, 292 P.3d 128 (2012); see also Citibank S.D., N.A. v. Ryan, 160 Wn. App. 286, 290-94, 247 P.3d 778 (2011) (Citibank employee's affidavit, unsigned cardmember agreement, and account statements did not establish as a matter of law that the defendant assented to the agreement's terms); Bridges, 154 Wn. App. at 727-28 (unsigned card agreement in effect when the defendant opened the account and defaulted on the debt and a generic summary of the purported account balance and payments, as opposed to detailed, itemized proof of the cardholder card use did not establish as a matter of law that the defendants assented to the agreement's terms).

To the extent the record suggests a claim in the nature of an oral agreement between Elyse and Citibank, the Washington three-year statute of limitations on oral contracts had run when Unifund sued Elyse in 2013.[19] Any such claim is time barred.

We reject Unifund's argument that two South Dakota statutes apply based on the choice of law provision in the 2010 cardholder agreement. The 2010 agreement provides that "[f]ederal law and the law of South Dakota . . . govern the terms and enforcement of this Agreement."[20] Relying on that provision, Unifund cites South Dakota's six-year limitation period for oral or written contract claims,[21] as well as South Dakota's statute that a cardholder is bound to a credit card agreement if the cardholder fails to cancel the account within 30 days after issuance of the credit card agreement.[22] But the 2010 contract choice of law provision is not relevant absent proof by Unifund that Elyse assented to that agreement. As discussed, there is no such evidence.

We also reject Unifund's argument that Washington's six-year limitations period for accounts receivable applies. Unifund did not argue in district court that Elyse's account was an account receivable governed by RCW 4.16.040(2). It attempted to raise this legal theory for the first time on appeal. But RALJ 2.2(d) expressly limits the issues that may be raised for the first time in superior court on RALJ appeal just as RAP 2.5(a) limits the issues that may be raised for the first time on appeal to this court from superior court.[23] Although RAP 2.5(a) and RALJ 2.2(d) are phrased permissively

---

[19] RCW 4.16.080(3).

[20] CP at 257.

[21] SDCL § 15-2-13.

[22] SDCL § 54-11-9.

[23] Compare RALJ 2.2(d) ("The superior court may refuse to review any claim of error that was not raised in the court of limited jurisdiction. However, a party may raise

that the court "may refuse to review,"[24] it is the rare exception when an appellate court will entertain a new legal theory that the opposing party and the trial court did not have an opportunity to fully explore.[25] We decline to consider a legal theory Unifund raised for the first time in superior court on its RALJ appeal.[26] The district court was correct in dismissing Unifund's action on Elyse's motion for summary judgment. The superior court erred in reversing the district court and entering judgment in favor of Unifund.

Elyse requests an award of attorney fees on appeal and properly devotes a section of her brief to her request.[27] A defendant is deemed the prevailing party and may be entitled to an award of attorney fees when the plaintiff recovers nothing in a damage action for less than $10,000.[28] If a statute allows a party to recover attorney

---

the following claimed errors for the first time on appeal: (1) lack of jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.") with RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.").

[24] Pulcino v. Fed. Express Corp, 141 Wn.2d 629, 649, 9 P.3d 787 (2000) (RAP 2.5(a) "is permissive in nature and does not automatically preclude the introduction of an issue at the appellate level") (overruled in part on other grounds, McClarty v. Totem Electric, 157 Wn.2d 214, 137 P.3d 844 (2006))

[25] Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 291, 840 P.2d 860 (1992) ("While new arguments are generally not considered on appeal, the purpose of RAP 2.5(a) is met where the issue is advanced below and the trial court has an opportunity to consider and rule on relevant authority.")

[26] RAP 9.12 (on review of summary judgment, "the appellate court will consider only . . . issues called to the attention of the trial court"); Cano-Garcia v. King County, 168 Wn. App. 223, 248, 277 P.3d 34 (2012) ("Issues and contentions neither raised by the parties nor considered by the trial court when ruling on a motion for summary judgment may not be considered for the first time on appeal.").

[27] See RAP 18.1(b).

[28] RCW 4.84.250, .270; see also LRS Elec. Controls, Inc. v. Hamre Const., Inc., 153 Wn.2d 731, 744-45, 107 P.3d 721 (2005).

fees in a court of limited jurisdiction, a party may recover attorney fees on appeal to the superior court.[29]  Similarly, if allowed by statute, we may award attorney fees to the prevailing party on appeal under RAP 18.1(a).  Because Elyse is the prevailing party on appeal, we award her reasonable attorney's fees and direct the district court to determine the amount of the award on remand.[30]

We reverse the superior court's judgment and remand with directions that the superior court vacate its judgment and remand this matter to the district court for reinstatement of its judgment dismissing the case and for an award to Elyse of her reasonable attorney fees at trial and on appeal to both this court and the superior court.

WE CONCUR:

_____

<hr>

[29] RALJ 11.2(b); Elyse also requested attorney's fees in her briefing to the superior court as required by RALJ 11.2(c).

[30] RAP 18.1(i).

9