IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VALA FOUROOHI, | ) | No. 79448-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOAN THOMAS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Joan Thomas believed that her former neighbor, Vala Fouroohi, was stalking her for years. Since 2014, Thomas had been reporting her concerns to law enforcement. However, the police found little to no evidence of stalking and never pursued the various complaints. Thomas filed suit against Fouroohi for harassment, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and requested an injunction. After discovery, Fouroohi was permitted to amend his answer and he added counterclaims of malicious harassment and intentional infliction of emotional distress. Thomas asserted statutory immunity under RCW 4.24.510. On motion for partial summary judgment, the trial court dismissed Fouroohi's counterclaims finding they were predicated on Thomas' reporting to the police and statutory immunity under RCW 4.24.510 applied. Fouroohi appeals and argues he was denied his right to trial by jury on the counterclaims, that RCW 4.24.510 does not

provide immunity to Thomas, and that the award of attorney fees and costs to Thomas under the statute was improper. We disagree and affirm the trial court.

FACTS

Vala Fouroohi and Joan Thomas first came into contact when Fouroohi showed Thomas and her husband a rental home in 2010, which was adjacent to the one in which the Thomases were residing. In 2011, Fouroohi moved into the home he had shown Thomas. Thomas and Fouroohi were neighbors for three years when Thomas began to notice things she thought were odd.

In the spring of 2014, Thomas recalled Fouroohi watching her in a "leering" fashion. Thomas began reporting her concerns to the police in September 2014. In October 2015, Thomas sought a restraining order against Fouroohi in King County Superior Court. The petition was served on Fouroohi, which was the first time he became aware of Thomas' reports to the police. Fouroohi contacted Bellevue Police Officer Jim Keene to inquire as to why he had not previously been made aware of Thomas' reports. Keene informed Fouroohi that he had stopped by Fouroohi's residence after the initial report, but no one was home. Keene did not pursue the report further because he did not think Thomas' claims had merit.

Thomas' first report, made September 13, 2014, alleged that Fouroohi was using technology to track her at home and that he moved his car to be in view of her bathroom window when she showered. Thomas did not believe that Fouroohi was in the car, but that the vehicle must be equipped with surveillance cameras.

Ten days later, Thomas called the police and alleged similar behavior, including a claim that Fouroohi was shining his lights into her window early in the

morning of the previous day. Thomas contacted the police again the day after her second report claiming that Fouroohi was shining a bright light into her home. Later in October, Thomas reported Fouroohi was following her in a black car; the police arrived, but Fouroohi was not present. Approximately a month later, she contacted police to inform them that, while she was staying at a hotel, her electronics had been tampered with through laser technology and she would not turn her cellphone on due to fear that Fouroohi could access her electronics. In December 2014, Thomas briefly moved to Atlanta, Georgia to stay with her sister. After returning to Washington, Thomas moved from her Bellevue home to Renton in June 2015. Thomas continued her reporting of what she characterized as Fouroohi stalking her.

In December 2015, Thomas was denied a permanent protection order. The judge found there was "very, very limited evidence" to prove Fouroohi had engaged in any stalking behavior toward Thomas. In late July 2016, Thomas called 911 alleging Fouroohi had driven up close behind her and was honking while she was on her way to church. Renton Police Officer Mark Coleman took up the complaints. Coleman noted in a report that after two and a half years and reviewing all of the materials provided by Thomas, he could not establish probable cause for any crime. Coleman had considered a video Thomas recorded of herself filming cars in a parking lot, one of which she indicated was Fouroohi's but was actually registered out of Oregon to an unrelated party. Thomas submitted the video to police because she believed it demonstrated that Fouroohi was stalking her. Coleman also reviewed Fouroohi's credit card statements obtained by Thomas

which she alleged showed he had been at locations near her for the purpose of stalking. Coleman found Thomas' claims were not credible and believed Thomas suffered from paranoia.

Thomas filed suit against Fouroohi on July 18, 2017, alleging that he had engaged in a years-long campaign of harassment and intimidation, encompassing sexually suggestive advances and threats of physical harm. Fouroohi answered on February 19, 2018. During discovery, Fouroohi learned that Thomas had dated a man of Middle Eastern descent during college and that she eventually sought and obtained a temporary restraining order against him based on allegations of stalking. Fouroohi also learned that Thomas sustained a head injury in July 2014 and had numerous appointments with a neurologist as a result. He obtained a copy of a psychiatric evaluation of Thomas in which the doctor diagnosed her with a delusional disorder "characterized by difficulty in determining what is real."

Fouroohi moved for leave to amend his answer on June 19, 2018 to include counterclaims to conform to the newly discovered evidence. The counterclaims were malicious harassment and intentional infliction of emotional distress. Thomas answered raising the defense of immunity pursuant to RCW 4.24.510, commonly referred to as the "anti-SLAPP" statute.

In December 2018, Thomas filed a motion for partial summary judgment. She sought dismissal of Fouroohi's counterclaims, alleging statutory immunity under RCW 4.24.510 from any legal claims based on her reporting to police. After oral argument, the trial court dismissed the counterclaims based on anti-SLAPP immunity. Additionally, the court found that Thomas was statutorily entitled to

attorney fees and costs for responding to the counterclaims. Fouroohi now appeals.

ANALYSIS

I.     Right to a Jury Trial

For the first time on appeal, Fouroohi avers that his right to a jury trial was violated by the court's dismissal on summary judgment. Article I, Section 21 of the state constitution provides "[t]he right to have factual questions decided by the jury." Dillon v. Seattle Deposition Reporters, LLC, 179 Wn. App. 41, 89, 316 P.3d 1119 (2014) (quoting State v. Montgomery, 163 Wn.2d 577, 590, 183 P.3d 267 (2008)). Fouroohi argues that his right to have a jury determine the facts regarding his counterclaims was violated by their dismissal on summary judgment.

Fouroohi attempts to support this proposition by arguing that Davis v. Cox, struck down RCW 4.24.510. 183 Wn.2d 269, 351 P.3d 862 (2015) (abrogated on other grounds by Maytown Sand and Gravel, LLC v. Thurston County, 191 Wn.2d 392, 423 P.3d 223 (2018)). In Davis, the Supreme Court struck down a portion of the anti-SLAPP law which provided for a special motion to strike procedure where a party has claimed immunity. Id. The court found the special motion to strike functioned beyond just screening out frivolous lawsuits. Id. at 295-96. The crux of the analysis focused on that, "RCW 4.24.525(4)(b) requires the trial judge to make a factual determination of whether the plaintiff has established by clear and convincing evidence a probability of prevailing on the claim." Id. at 293.

As a preliminary matter, Fouroohi's argument on this issue is improperly raised for first time on appeal as it was not presented in the trial court. See RAP

2.5(a). Further, he fails to provide authority or otherwise engage in any substantive argument as to why an exception to this rule might allow us to reach the matter. Even if we took up this alleged error, Davis does not support Fouroohi's position. In that case, the Supreme Court took up review of the special motion to strike procedure in RCW 4.24.525(4)(b), but ultimately invalidated RCW 4.24.525 in its entirety, holding that the special motion to strike provision invaded the jury's essential role to determine factual disputes. Id. at 294-96. Contrary to Fouroohi's claim that the holding in Davis encompasses RCW 4.24.510, the case did not reach, much less strike down, other provisions in that section of the chapter regarding substantive immunity as a whole, nor did it reject summary judgment as the proper mechanism for assessing claims of immunity. Here, we find no error in the trial court's use of summary judgment procedure in its review, and eventual dismissal, of Fouroohi's counterclaims based on Thomas' assertion of anti-SLAPP immunity.

II.     Counterclaims Predicated on Reporting to Law Enforcement

Fouroohi's second argument is that the trial court improperly dismissed his counterclaims at summary judgment by finding that the anti-SLAPP statute provided Thomas immunity as to her reports to police. Fouroohi argues that RCW 4.24.510 does not apply and asserts that is because his counterclaims were not predicated on Thomas' reporting.

We review a ruling on summary judgment de novo. Lowe v. Rowe, 173 Wn. App. 253, 258, 294 P.3d 6 (2012). RCW 4.24.510 provides immunity from civil liability for a complaint or information provided to government, stating:

> A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars. Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

"The legislature enacted RCW 4.24.510 to encourage the reporting of potential wrongdoing to governmental entities." Gontmakher v. The City of Bellevue, 120 Wn. App. 365, 366, 85 P.3d 926 (2004). "[I]mmunity applies under RCW 4.24.510 when (1) a person 'communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization' and (2) the complaint is based on any matter 'reasonably of concern to that agency.'" Bailey v. State, 147 Wn. App. 251, 261, 191 P.3d 1285 (2008). There is no good faith requirement under RCW 4.24.510. Id. at 262-63.

Review of Fouroohi's amended answer reinforces Thomas' argument that the counterclaims were predicated on the reporting to police, which triggered her immunity under RCW 4.24.510. One of the most illuminating excerpts states,

> [Thomas] knew that [Fouroohi] was an airline pilot. [Thomas] knew that if [Fouroohi] was arrested or if a permanent restraining order was put in place against him he would likely lose his job. [Fouroohi] was in fear of his person and property due to the actions of [Thomas]. [Fouroohi] suffered severe emotional distress as a result.

The only language within the complaint that could possibly suggest an alternate basis are assertions that in January 2017, Thomas "stood menacingly outside

- 7 -

[Fouroohi's] house" and a reference to Thomas' first set of interrogatories which acknowledge that she sought a temporary restraining order against a prior boyfriend who was of Middle Eastern descent. The latter point relates to Fouroohi's argument that, as an Iranian American Muslim, he was targeted by Thomas based on his ethnicity and religion which goes to the core of his malicious harassment counterclaim. These two outlier assertions are insufficient to overcome the clear conclusion that the amended answer and counterclaims primarily focused on Thomas' reporting.

At oral argument, both on summary judgment and before this court, Fouroohi struggled to articulate any basis for the counterclaims apart from Thomas' reporting. Most telling is that Fouroohi relied on and submitted the police reports as evidence of Thomas' behavior which he believed gave rise to his counterclaims. The trial court acknowledged that the evidence Fouroohi focused on was likely helpful for defending against Thomas' suit, but not something that could give rise to the counterclaims in light of immunity under RCW 4.24.510.

Most analogous to the present case is Lowe v. Rowe, which involved a defamation claim dismissed as improperly predicated upon service of a trespass notice. 173 Wn. App. at 255. In Lowe, Division Three upheld the trial court's dismissal on summary judgment based on anti-SLAPP immunity because the defamation claim was based entirely on the trespass notice. Id. On review, the court engaged in statutory interpretation and reinforced that the statute did not require a good faith component to the reporting in order to provide immunity where such reports were the basis of the claim. Id. at 261-62.

As the trial court here determined, Thomas' reporting or her actions which were in furtherance of that reporting, are the crux of Fouroohi's claims. The court does not consider whether Thomas' reports against Fouroohi were made in good faith. As in Lowe, immunity under RCW 4.24.510 attaches and the dismissal on summary judgment was proper.

Fouroohi now also argues that the counterclaims are predicated on Thomas' lawsuit itself and not simply her reporting, which he claims renders RCW 4.24.510 inapplicable. It is noteworthy, however, that Fouroohi did not plead abuse of process as a counterclaim, only malicious harassment and intentional infliction of emotional distress. Fouroohi's briefing to this court relies on Saldivar v. Momah, 145 Wn. App. 365, 186 P.3d 1117 (2008) for the proposition that RCW 4.24.510 does not immunize a party within a private lawsuit for private relief. At oral argument, Fouroohi acknowledged that this specific case was never cited to the trial court, but claimed that the theory that the counterclaims were based on the lawsuit was presented. Our review of the record does not support that assertion. "[I]t is the rare exception when an appellate court will entertain a new legal theory that the opposing party and the trial court did not have an opportunity to fully explore." UNIFUND, CCR, LLC v. Elyse, 195 Wn. App. 110, 382 P.3d 1090 (2016). As this argument was not raised in the trial court, we decline to reach the issue under RAP 2.5(a).

III.    Attorney Fees

Fouroohi also challenges the trial court's award of attorney fees to Thomas based on the recovery provisions in the anti-SLAPP statute. RCW 4.24.510 says

"A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense." Because we affirm the dismissal of Fouroohi's counterclaims based on statutory immunity, the statute supports the trial court's award of attorney fees to Thomas.

Thomas requests attorney fees on appeal. As the prevailing party, she is entitled to attorney fees under RCW 4.24.510 to recover the expense of having to further defend her claim of immunity on appeal. See Lowe, 175 Wn. App. at 264. The amount shall be determined by a Commissioner of this court upon receipt of supporting documentation from Thomas pursuant to RAP 18.1.

Fouroohi's counterclaims were predicated on Thomas' reporting to law enforcement, as such Thomas was immune from suit under RCW 4.24.510 and the trial court's dismissal of the counterclaims was proper. Accordingly, Thomas is entitled to attorney fees both at the trial court and as the prevailing party on appeal.

Affirmed.

WE CONCUR:

- 10 -