[No. 68632-7.   En Banc.]
Argued September 21, 2000.     Decided May 10, 2001.

MICHAEL J. ELLERMAN, *Petitioner,* v. CENTERPOINT PREPRESS, INC., ET AL., *Defendants,* BETTY HANDLY, *Respondent.*

*Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*); and *J. David Smith* (of *Law Offices of J. David Smith*), for petitioner.

Respondent not represented on appeal.

ALEXANDER, C.J. — We granted Michael Ellerman's petition to review a Court of Appeals' decision affirming a judgment in favor of Betty Handly and against Michael J. Ellerman in Ellerman's action for "wages owed and exemplary damages." The issue that was before the Court of Appeals and is now before us is whether Handly is liable for Ellerman's unpaid wages as a "vice principal" or "agent" of Ellerman's employer, Centerpoint Prepress, Inc. We hold that the Court of Appeals correctly determined that Handly

was neither a "vice principal" nor an "agent" personally liable in damages for the willful withholding of wages. Accordingly, we affirm the Court of Appeals.

## I

The basic facts of this case are not in dispute. For several years, Michael J. Ellerman worked for a typesetting business, the "Type Gallery." That business was owned by Betty Handly. Type Gallery subsequently failed and went into bankruptcy proceedings in October 1992.

In November 1992, a new typesetting business was started called Centerpoint Prepress, Inc. (Centerpoint). The only investor in this business, Rosemary Widener, became the new corporation's sole stockholder, board member, and president. By virtue of her position, Widener was the only person authorized to sign checks on behalf of the corporation and the only person who actually did so. Betty Handly managed the company's business activities and was paid $16.50 per hour for her services.

Michael Ellerman also began working at Centerpoint in November 1992 at an agreed upon wage of $13.50 per hour. Unfortunately, Centerpoint soon ran into financial difficulties. As a consequence, Ellerman, Handly, and other employees were not paid all of the wages that were due them for the period May 1 through June 18, 1993.[1]

Centerpoint eventually ceased operation. Ellerman then brought suit against Centerpoint, Widener, and Handly for $2,782.94 in unpaid wages. He also sought exemplary damages, pursuant to RCW 49.52.070, in an amount equal to twice the amount of the wages he alleged were willfully and intentionally withheld from him. Ellerman obtained a default judgment against Centerpoint. Ellerman eventually settled with Widener, leaving Handly as the only defendant for trial.

The case proceeded to trial. At its conclusion a King

---

[1] During this time, Ellerman received a partial payment of wages in the amount of $400.00.

County court commissioner, acting as a judge pro tempore, determined that Handly had no liability for unpaid wages on the basis that she was not an "employer" liable for wages and had not violated any statutory provisions.

Ellerman appealed the trial court's decision to the Court of Appeals. That court affirmed the trial court, holding that Ellerman's wages were not willfully and intentionally withheld because the company simply lacked the financial ability to pay the wages.

Ellerman then petitioned this court for review. We granted his petition and remanded to the Court of Appeals for reconsideration in light of our decision in *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 961 P.2d 371 (1998), a case in which we held that financial inability to pay wages is not a defense to a claim of willful and intentional withholding of wages. On remand, the Court of Appeals again affirmed the judgment in favor of Handly. Although it acknowledged our holding in *Schilling*, it nonetheless concluded that Handly was not personally liable because she was neither Ellerman's "employee" nor "an officer, vice principal or agent" of his employer responsible for the payment of wages. RCW 49.52.050, .070. Ellerman again petitioned for review and we granted his petition.

## II. ANALYSIS

Because there is no dispute that Ellerman is owed unpaid wages, the issue before us is whether Handly, an employee of Centerpoint, who functioned as the company's business manager, has personal liability for payment of Ellerman's wages. Ellerman claims that she has liability, pursuant to statutes, as a vice principal or agent of Centerpoint. Handly contends that she has no liability under applicable statutes because she was not Ellerman's employer and had no authority to make decisions regarding wages or payment of wages.

## A

When an employee is discharged or otherwise ceases to work for an employer, "the wages due him on account of his employment shall be paid to him at the end of the established pay period." RCW 49.48.010. Any "employer or officer, vice principal or agent of any employer" is guilty of a misdemeanor if he or she "[w]ilfully and with intent to deprive the employee of any part of his wages" pays the employee less than the wage to which the employee is entitled. RCW 49.52.050(2). Any "officer, vice principal or agent of any employer" who shall violate RCW 49.52.050(2) shall be liable to the unpaid employee "for twice the amount of the wages unlawfully . . . withheld" and attorney fees. RCW 49.52.070.

Ellerman does not contend that the trial court erred in holding that Handly was not Ellerman's "employer."[2] Rather, he asserts that Handly was a "vice principal" or "agent" of Centerpoint and, therefore, liable for the withholding of wages. Thus, the issue before us is whether Handly falls within the aforementioned statutes as a "vice principal" or an "agent" of Centerpoint who had liability for the withholding of Ellerman's wages.

■■ When interpreting statutory language, the goal of the court is to carry out the intent of the Legislature. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute. *In re Sehome Park Care Ctr.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995).

■ The Legislature enacted the statutes at issue here in 1939. Sometimes referred to as the "Anti-Kickback" statutes, they were enacted to prevent abuses by employers in a labor-management setting, e.g., coercing rebates from

---

[2] In its memorandum opinion, in letter form, the trial judge indicated that Handly was not an "employer, director, partner nor de factor [sic] debtor or sole entrepreneur concerning the activities of Center Point Prepress." Clerk's Papers at 84.

employees in order to circumvent collective bargaining agreements. *See Cameron v. Neon Sky, Inc.*, 41 Wn. App. 219, 222, 703 P.2d 315 (citing *McDonald v. Wockner*, 44 Wn.2d 261, 269-71, 267 P.2d 97 (1954)), *review denied*, 104 Wn.2d 1026 (1985). This court recently stated in *Schilling*, 136 Wn.2d at 159 (quoting *State v. Carter*, 18 Wn.2d 590, 621, 140 P.2d 298, 142 P.2d 403 (1943)), with respect to these statutes:

> "[T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages . . . ."

We held that these statutes should be liberally construed to advance the Legislature's intent to protect employee wages and assure payment. *Schilling*, 136 Wn.2d at 159.

Ellerman's primary contention is that Handly falls under RCW 49.52.070 as a "vice principal." More specifically, he argues that since the statute does not define "vice principal," that term should be given its common law meaning. *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994) (Legislature is presumed to intend undefined terms to mean what they did at common law). Under the common law, the concept of "vice principal" was used primarily in the context of fellow-servant law to determine whether an employee could be held liable when one employee inflicted injury on another employee. Under that theory of liability, an employee is considered a vice principal of the employer if he or she has the authority to direct and supervise the work of the other employee. *Allend v. Spo-*

*kane Falls & N. Ry.*, 21 Wash. 324, 338, 58 P. 244 (1899). In such circumstances, the "vice principal" is the employer's "alter ego" with respect to the work being done. *Carlson v. P.F. Collier & Son Corp.*, 190 Wash. 301, 310-11, 67 P.2d 842 (1937). We have held that the ultimate test for determining whether an employee is a vice principal is the power of superintendence and control. *Id.*

Clearly under the common law, the term "vice principal" is broad and could include a manager or supervisor such as Handly who the trial court found was the "manager of the corporation's business affairs, and overseeing the activities of the other employees." Clerk's Papers (CP) at 68. It does not, however, follow that Handly is personally liable for the wages that were not paid to Ellerman or for exemplary damages. We say that because, in our view, the statute requires more than a finding that the putative vice principal is managing the employer's business. It requires the vice principal to withhold wages "[w]ilfully and with intent to deprive the employee" of his wages. RCW 49.52.050(2). Thus, we conclude that a vice principal cannot be said to have willfully withheld wages unless he or she exercised control over the direct payment of the funds and acted pursuant to that authority. Although the dissent suggests that our determination is inconsistent with the common law definition of "vice principal," we are satisfied that it accords with a sensible interpretation of the meaning of the statutes in question. If we reached the conclusion advanced by Ellerman, then any supervisor or manager of an employee might have personal liability if the company did not pay the employee, regardless of whether the manager or supervisor had any control over how and when the company paid its employees. Such a result would be inconsistent with the plain language of the above mentioned statutes.

Ellerman argues that personal liability should be imposed on any manager under the statute because their managerial decisions may affect the company's financial ability to pay wages. Although the wage withholding statutes, as we have noted above, are to be liberally construed

to protect wages of employees and to assure payment, holding any person who manages the daily operations of a business liable under the statute, even if they do not have the individual authority to pay the actual wages, does not appear to us to further the intent of the Legislature. We think it is reasonable to conclude it intended to impose personal liability on only vice principals who directly supervise or control the payment of wages. In sum, the liberal construction of the term "vice principal" that Ellerman maintains could result in substantial unfairness by imposing personal liability on managers or supervisors who had no direct control over the payment of wages.

Ellerman argues, alternatively, that even if Handly was not a "vice principal" of Centerpoint, she was an "agent" under the statute. Although the term "agent," as used in RCW 49.52.050 and .070 has not been interpreted by any Washington court, the term has been defined generally as a "person authorized by another to act for him." BLACK'S LAW DICTIONARY 85 (4th ed. 1951).

The Court of Appeals rejected Ellerman's argument that Handly was an agent under the statute. In doing so it concluded that in order to be an agent, the person must have some power and authority to make decisions regarding wages or the payment of wages. Specifically, it noted:

> Although the statute is to be liberally construed to protect employee wages and assure payment, it would be incongruous to hold that any possible agency relationship between an employer and an employee can make that employee personally liable for the wages of other employees. The "agency" contemplated by the statute requires some power and/or authority of the alleged agent to make decisions regarding wages, or the payment or withholding of wages before the possibility of personal liability can attach.

*Ellerman v. Centerpoint Prepress, Inc.*, No. 35932-1-I, slip op. at 6 (Wash. Ct. App. Sept. 7, 1999) (footnote omitted). We find the reasoning of the Court of Appeals persuasive. In our judgment, the statutes in question require more than the establishment of an agency relationship. Rather, there

must be a showing that an agent had some control over the payment of wages before personal liability attaches to the agent of an employer for the employer's nonpayment of wages to an employee.

## B

■ In light of our determination of the meaning of the terms "vice principal" and "agent," the next question is whether the trial court correctly determined, based on the evidence presented, that Handly was not personally liable for the unpaid wages under the statutory provisions. Unfortunately, the trial judge made no express findings as to whether Handly was an "agent" or a "vice principal." It did, however, issue a lengthy memorandum opinion, in letter form, in which it set forth its reasoning. It, thereafter, entered findings of fact and conclusions of law, which the Court of Appeals properly characterized as a "substantially truncated version of the letter opinion." *Ellerman*, slip op. at 5 n.2.

After reviewing the findings, in light of the letter opinion,[3] we are satisfied that they fully support the trial judge's implicit, if not explicit, conclusion of law that Handly was not an "agent" or "vice principal" of Centerpoint with liability to Ellerman for wages unpaid to Ellerman by Centerpoint. Although the dissent disagrees and asserts that "[t]here is considerable evidence on the record that Handly was an agent or vice principal," we conclude a remand to determine Handly's status is unwarranted. Dissent at 526. As the trial court found, Rosemary Widener, not Betty Handly, was the sole principal of the corporation and was the only person authorized to sign checks and was the only person who did so. The trial judge also observed that Widener only signed checks when she determined there were sufficient funds and that "[t]his was not a decision done by Mrs. Handly." CP at 86.

---

[3] A memorandum opinion may be considered as supplementation of formal findings of fact and conclusions of law. *See In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

■ Although the trial court's findings say little about Handly's involvement, if any, in decision making over payment of wages, we observe that Ellerman, the plaintiff, had the burden of proof at trial. That being the case, the absence of a finding of fact is to be interpreted as a finding against him. *See In re Marriage of Olivares*, 69 Wn. App. 324, 334, 848 P.2d 1281 ("the absence of a finding in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against that party on that issue"), *review denied*, 122 Wn.2d 1009, 863 P.2d 72 (1993).

## III

In conclusion, for reasons stated above, we agree with the result reached by the Court of Appeals.

Affirmed.

SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, and BRIDGE, JJ., and GUY, J. Pro Tem., concur.

TALMADGE, J.* (dissenting) — RCW 49.52.050 is Washington's statute forbidding employers and their surrogates from withholding wages legitimately due to employees; the majority interprets the statute in a fashion inconsistent with the meaning of long-standing common law terminology. The majority's approach will diminish protection for employees from the unlawful withholding of wages due. For these reasons, I respectfully dissent.

As we noted in *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157, 961 P.2d 371 (1998):

> The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages, including the statutes at issue here which provide both criminal and civil penalties for the willful failure of an employer to pay wages.

As part of this policy, the Legislature enacted RCW

---

* Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

49.52.050 and .070 providing for exemplary damages where "[a]ny employer or officer, vice principal or agent of any employer . . . [w]ilfully and with intent to deprive the employee of any part of his wages, [pays] any employee a lower wage than the wage such employer is obligated to pay such employee by . . . contract[.]" RCW 49.52.050(2), .070. The purpose of the statutory scheme is *remedial*—to protect the employee's earned wages. *Schilling*, 136 Wn.2d at 159. The statutes are to be *liberally construed. Schilling*, 136 Wn.2d at 159; *Brandt v. Impero*, 1 Wn. App. 678, 682, 463 P.2d 197 (1969).

While the terms "vice principal" and "agent" have no statutory definition, they have well-understood common law meanings. The majority discusses the common law heritage of the terms "vice principal" and "agent," majority at 520, but then proceeds to add an additional requirement to the traditional definition—the vice principal or agent must exercise direct control over the wage decisions or the payment of wages—before the statute applies. This requirement is found nowhere in the language of the statute. It is contrary to the common law definitions and our statutory interpretation canon that the Legislature is presumed to intend a common law usage when it uses common law terms. *State v. Pacheco*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994). Finally, the majority's interpretation certainly does not provide the liberal construction of these statutes we have previously mandated. Plainly, the majority today acts in a legislative mode, restricting the remedy of employees to recover wages they earned. I would interpret the terms "vice principal" and "agent" as understood at common law.

Once the proper legal standard is applied, Betty Handly's status should be decided by the trier of fact. Michael Ellerman was originally employed by Type Gallery, a business owned by Betty Handly. When that company went bankrupt, Handly tried to set up a new business with Type Gallery's employees. She was specifically advised she could not take the lead on the new business because of the bankruptcy. She did, however, set up Centerpoint with

Rosemary Widener, another former Type Gallery employee.

Handly managed the business as its chief operating officer. While Widener had check writing authority, Handly presented blank checks for her signature. The trial court found that she was "manager of the company's business activities," and "over[saw] the activities of the employees and the corporation[.]" Clerk's Papers at 82. It is evident she had the type of supervisory authority necessary to make her the "alter ego" of the company in terms of her relationship with other employees (a status required to meet the common law definition of vice principal). In fact, it was Handly who leased equipment for the business and gave her personal guaranty for the lease. She urged Ellerman to work without compensation and to illegally take unemployment compensation.

Most significantly, Handly had a role in wage issues. Widener testified she was "part of the decision-making in terms of . . . paying employees," and that "we," meaning Handly and Widener, made the decision to pay Ellerman only part of his wages. Report of Proceedings (RP) at 43-44. Widener also answered "yes" to the question of whether Handly was "involved in the process of which employees to pay and not to pay." RP at 80.

There is considerable evidence on the record that Handly was an agent or vice principal. This case should be reversed and remanded to determine her status.

The purpose of RCW 49.52.050 and .070 was to give a real remedy to employees who suffered a wrongful loss of wages at the hands of an employer or any key person acting on the employer's behalf. Michael Ellerman earned his wages and he is entitled to recover them from the entities and individuals that wrongfully withheld them from him. The majority's restrictive interpretation of the statutory remedy is inconsistent with the legislative purpose and our case law interpreting the legislative remedy. I would reverse the trial court's judgment and remand for trial.