**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE FEB 0 2 2017

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Feb 2, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN

MICHAEL ALLEN,

        Plaintiff,

v.

ZECHARIAH CLIFTON DAMERON IV, DANIEL STANDEN, JOHN RIGAS and DAVID M. McGRANE,

        Defendants,

ZECHARIAH CLIFTON DAMERON IV, DANIEL STANDEN, JOHN RIGAS,

        Third-Party Plaintiffs,

STEVEN KALMANOVITZ aka STEVEN KALMAN,

        Third-Party Defendant.

No. 93056-2

En Banc

Filed   FEB 0 2 2017

WIGGINS, J.—The United States District Court for the Western District of Washington asks us to answer two certified questions about the application of RCW 49.52.050, the wage rebate act (WRA), in circumstances of chapter 7 bankruptcy:

> Is an officer, vice principal, or agent of an employer liable for a deprivation of wages under RCW 49.52.050 when his or her employment with the employer (and his or her ability to control the payment decision) was terminated before the wages became due and owing?

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2

> Does an officer, vice principal, or agent's participation in the decision to file the Chapter 7 bankruptcy petition that effectively terminated his or her employment and ability to control payment decisions alter the analysis? If so, how?

Order Vacating J. & Certifying Questions to Wash. Supreme Ct., *Allen v. Dameron*, No. C14-1263RSL, at 3-4 (W.D. Wash. Apr. 28, 2016).

We answer both the certified questions in the affirmative. First, officers, vice principals, or agents may be held personally liable under the WRA, even if the payday date for those wages came after the employer filed for chapter 7 bankruptcy. Second, an officer's participation in the decision to file the chapter 7 bankruptcy petition tends to show a willful withholding of wages—the second element required by the WRA.

FACTS

I.      Factual History

Michael Allen accepted a job as interim chief financial officer (CFO) for Advanced Interactive Systems Inc. (AIS)[1] and transferred to Seattle from the United Kingdom where he worked for one of AIS's subsidiaries. AIS was profitable only twice in its company history and repeatedly defaulted on loans from its senior secured lender, Anderson Mezzanine Partners (KAMP).[2] KAMP initially excused those defaults by renewing its agreements with AIS from 2010 until early 2013. However, on February 14,

---

[1] AIS developed, manufactured, and sold virtual reality products for government agencies, the military, and the federal Department of Homeland Security.

[2] In August 2010, AIS borrowed $15 million from KAMP, and KAMP received a senior secured interest in AIS's United States assets and control agreements for AIS's United States bank accounts, giving KAMP the right to seize AIS's bank accounts. AIS borrowed another $5 million from KAMP in May 2012.

2

2013, AIS received a notice of default from KAMP, and KAMP seized control of AIS's United States bank accounts.

After it received the notice of default from KAMP, the AIS board tried to save AIS from its impending bankruptcy. At that time, there were five board members: Zechariah Clifton Dameron IV and Daniel Standen (the defendants in this action), as well as John Rigas, David McGrane,[3] and Steven Kalmanovitz (aka Steven Kalman). Unfortunately, the board was unsuccessful and AIS filed for bankruptcy on March 14, 2013. The intervening events were as follows.

On February 15, 2013, the board wrote a letter asking KAMP to release the funds necessary for AIS to meet its payroll. Five days later, the board wrote to inform KAMP that should it fail to release the funds, AIS would have to terminate all of its employees. That letter informed KAMP that failure to release the funds would incur liability for withheld wages under chapter 49.52 RCW. KAMP responded, lifting its hold on AIS's bank accounts. As a result, the board now authorized every payment AIS made. However, the existing funds were insufficient to meet AIS's financial obligations, and the board requested additional funding[4] from KAMP.

Given the dire financial state of AIS, Dameron proposed that AIS make preparations to file for chapter 7 bankruptcy[5] should KAMP decline to provide additional funding to AIS. Standen seconded Dameron's proposal, and the board approved the

---

[3] McGrane was also the chief executive officer and president of AIS until he resigned on March 5, 2013.

[4] The board also suggested selling AIS's subsidiaries.

[5] *See* 11 U.S.C. §§ 701-784.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

proposal. Specifically, Dameron and Standen were "empowered" to file a chapter 7 bankruptcy petition after approval from the board of directors. Immediately following that meeting, Rigas resigned.

KAMP rejected all of the board's funding requests. In light of KAMP's rejection, Dameron proposed that AIS file for chapter 7 bankruptcy as soon as possible, terminate all AIS employees, except for those necessary to prepare the chapter 7 filings, and cease operations of AIS and its subsidiaries. The board unanimously approved the proposal. McGrane resigned after that meeting, leaving AIS without a chief executive officer (CEO) and only Dameron, Standen, and Kalman as the remaining members of the board.

Pursuant to the board's action, Allen sent a termination letter to AIS's employees on March 4. The termination letter informed the employees of the chapter 7 filing and acknowledged that they would receive their final paycheck, including accrued vacation, on March 15, their regular payday date. Allen's employment was not terminated at this time since he was one of the employees the board deemed necessary to prepare the chapter 7 filing.

At the next board meeting, the board decided that upon filing for chapter 7 bankruptcy, the remaining company funds would be allocated for retained employees, payroll taxes, state sales taxes, and employees, while holding $25,000 for insurance. Shortly thereafter, the board paid $19,837.08 for AIS's April general insurance premiums, $13,953.00 for directors' and officers' insurance, and $7,853.96 in payroll advance for retained employees.

On March 14, 2013, the board authorized the filing of AIS's chapter 7 bankruptcy petition.[6] Minutes prior to the filing, the board adopted a resolution to use its remaining assets for employees' wages. The board paid approximately $16,000.00 to employees' 401K plans and $31,423.72 to payroll. That amount was not sufficient to cover all wages that AIS owed to its employees, which amounted to $322,615.02, and none of that money was paid to Allen.

II.     Procedural History

After AIS filed chapter 7 bankruptcy, three former employees filed a class action suit on behalf of all terminated AIS employees against all former AIS board members, including Dameron and Standen (hereafter referred to as the defendants), for willful withholding of wages under RCW 49.52.050, the Washington Rebate Act (WRA). That case settled, and the defendants and Rigas agreed to pay the class $356,500. However, the terms of the settlement offer excluded Allen as a member of that class.

Thereafter, Allen filed this civil suit in the United States District Court for the Western District of Washington, alleging that the defendants willfully withheld wages in violation of the WRA.[7] *See Allen v. Dameron*, No. C14-1263RSL, 2016 WL 827168, at *1 (W.D. Wash. Mar. 3, 2016) (court order), *vacated on recons.*, 2016 WL 4772484

---

[6] Allen asserts that the bankruptcy filing terminated all employees, including Dameron, Standen, and Kalman. Dameron and Standen disagree, asserting that they resigned following the filing. However, Kalman is the only board member who appears to have formally resigned; in a letter dated March 13, 2013, Kalman announced his resignation, effective upon the chapter 7 filing. Regardless, Dameron and Standen's employment terminated upon the filing for chapter 7 bankruptcy.

[7] Allen sought an award of $84,175.21, but the district court concluded that the unpaid wages, severance, and unused vacation amounted to $78,303.17.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2

(Apr. 22, 2016) (court order). Allen claimed that he was owed three months' severance pay, unused vacation pay, and wages earned during two pay periods: wages with a payday date one day after the bankruptcy petition was filed and one week's worth of wages with a payday date 15 days after the filing.[8] The defendants moved for summary judgment, and the district court granted that motion, reasoning that (1) the defendants did not have the authority to pay Allen's wages on the dates they became due and that (2) the defendants did not willfully withhold wages from Allen. *See id.* at *4.

Allen timely filed a motion asking the district court to vacate its judgment and reconsider the defendants' motion for summary judgment. Allen argued that the district court should have certified the relevant questions of state law to this court. Over the defendants' opposition, the district court granted Allen's motion to vacate the summary judgment. The district court then certified two questions to this court:

> [(1)] Is an officer, vice principal, or agent of an employer liable for a deprivation of wages under RCW 49.52.050 when his or her employment with the employer (and his or her ability to control the payment decision) was terminated before the wages became due and owing?
>
> [(2)] Does an officer, vice principal, or agent's participation in the decision to file the chapter 7 bankruptcy petition that effectively terminated his or her employment and ability to control payment decisions alter the analysis? If so, how?

We granted review pursuant to RCW 2.60.020.[9]

---

[8] AIS filed its chapter 7 petition on March 14, 2013. The first set of Allen's wages had a pay period that ended on March 10, with a payday date of March 15. The second set of Allen's wages had a pay period that ended on March 24 and a payday date of March 29.

[9] On appeal, on October 13, 2016, the defendants filed their answer brief to the Washington Employment Lawyers Association's amicus brief supporting Allen. Allen moved to strike this answer, arguing that it was untimely because the deadline to file any answer to the amicus was September 29, 2016. Subsequently, the court allowed the defendants to file a motion for an extension of time to

6

*Allen v. Dameron IV et al.*, No. 93056-2

STANDARD OF REVIEW

We treat certified questions as "questions of law that we review de novo." *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011). In addition, "[w]e consider the legal issues not in the abstract but based on the certified record provided by the federal court." *Id.* For cases such as this, where the questions "pertain to a motion for summary judgment, we perform the same inquiry as the district court." *Saucedo v. John Hancock Life & Health Ins. Co.*, 185 Wn.2d 171, 178, 369 P.3d 150 (2016).

ANALYSIS

We reject the defendants' invitation to reformulate the certified questions and answer both certified questions in the affirmative. First, we hold that an officer, vice principal, or agent may be personally liable for the failure to pay wages under the WRA, even when the payday date for such wages comes after the filing of chapter 7 bankruptcy. Second, an officer, vice principal, or agent's participation in the decision to file for chapter 7 bankruptcy tends to show a willful withholding of wages under the WRA.

I.      We Decline the Invitation To Reformulate the Certified Questions

We have the authority to reformulate certified questions. *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 205, 193 P.3d 128 (2008). However, we decline to do so here.

The defendants' request to reformulate the certified questions is actually a request for the court to answer a completely different question. The defendants ask us to answer whether they, as members of the board of directors, may be held liable under the WRA.

---

be applied to their answer retroactively. We passed these motions to the merits and now grant the defendants' motion for extension of time and deny Allen's motion to strike.

7

The certified questions, on the other hand, ask us to clarify our law regarding the application of the WRA in circumstances of chapter 7 bankruptcy. The district court's certified questions already assume the existence of individuals who are liable under the WRA. The WRA states that an individual can be personally liable if they are an "officer, vice principal, or agent."[10] RCW 49.52.050. The district court's certified questions mirror that language exactly by asking about the liability of an "officer, vice principal, or agent." We decline to answer a question that the federal district court seems already to have answered.

In addition, the circumstances where a member of the board of directors will be liable under the WRA appear to be rare. Here, the directors were acting as the de facto officers of AIS. In fact, AIS operated without a CEO for a period of several days until the board filed for chapter 7 bankruptcy. The board made the decisions of who, when, and how much was being paid to AIS employees. Such decision-making is not within the normal duties of a member of the board of directors for a corporation. Given the rare circumstances in which a director would make the type of decisions subject to liability under the WRA, we decline to reformulate the certified question.

II. An Officer, Vice Principal, or Agent May Be Held Liable under the WRA When His or Her Employment Was Terminated by the Filing of a Chapter 7 Bankruptcy Petition and the Payday Date for Wages Came after the Filing

We answer the first certified question in the affirmative for two reasons. Neither the date of the employee's payday in relation to the filing of the chapter 7 bankruptcy nor

---

[10] The terms are defined according to their common law meanings. *See Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 520-23, 22 P.3d 795 (2001). The additional requirement that the individual officer, vice principal, or agent had control over the payment of wages is discussed *infra* at Section II.

the court's holding in *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 522-23, 22 P.3d 795 (2001), precludes imposing personal liability under the WRA on an officer, vice principal, or agent.

A.     In Circumstances of Chapter 7 Bankruptcy, We Look to Whether an Employee's Earned Wages Were Withheld on the Date the Corporation Filed for Bankruptcy

As demonstrated in *Morgan v. Kingen*, 166 Wn.2d 526, 210 P.3d 995 (2009), the filing of bankruptcy does not cut off the potential liability of an officer, vice principal, or agent. *Morgan* presented a similar fact pattern—wages were earned prior to the chapter 7 filing, but were not payable until payday dates after the filing. *Id.* at 532, 535 n.1. A CEO and CFO opened and operated a casino. *Id.* at 531. One year after opening, the casino filed for chapter 11 bankruptcy. *Id.* at 532. After the chapter 11 filing, the CEO and CFO continued to operate the casino as debtors-in-possession. *Id.* The casino's financial position continued to decline, and the United States trustee moved to convert the chapter 11 proceeding into a chapter 7 liquidation. *Id.* During the hearing on the motion, the officers declined to inject more capital into the casino and the matter was converted into a chapter 7 bankruptcy. *Id.* Before the conversion, the casino's employees earned wages covering two pay periods, and the payday dates for the wages occurred after the chapter 7 conversion date. *Id.* at 532, 535 n.1. The officers therefore "suggest[ed] the failure to pay these wages was beyond their control," relying on our holding in *Ellerman*. *Id.* at 535.

We addressed this argument first in a footnote, stating that "the first pay period of unpaid wages ended well before the conversion date . . . [and] even if we considered the payday date relevant, [the casino] lacked adequate cash to pay the employees their earned wages when it entered chapter 7 liquidation." *Id.* at n.1. Thus, *Morgan* suggested

9

that in circumstances of bankruptcy, we are most concerned with the withholding of earned wages on the date of filing, regardless of whether the established payday date comes after the employer entered bankruptcy.

This understanding is consistent with RCW 49.48.010, which states that "[w]hen any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period." Under normal circumstances, an employee is paid his or her wages earned during a specified pay period on a payday date established by the employer. WAC 296-126-023. In those circumstances, we judge whether an employer or agent has withheld wages under the WRA if the employer failed to pay the employee his or her wages after the payday date ended. However, when an employer files for chapter 7 bankruptcy, the filing usually terminates all employees, as happened in this case. Often, this renders the previously established pay periods and payday dates irrelevant if they occur after the filing.[11]

---

[11] The defendants argue that we should not hold an officer, vice principal, or agent liable in this situation because the legislature has created an alternative remedy for employees like Allen. The defendants direct the court to RCW 49.56.010, which states that wage claims "are preferred claims [in cases of bankruptcy], and must be paid by such trustees or assignees before any other creditor or creditors." Therefore, the defendants argue, "the trustee is the proper party against whom such claims may and should be brought."

This assertion ignores the purpose of the WRA, which expressly provides for personal recovery against individual officers. As we have noted in several cases, "The statute must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998). In addition, "[t]he wage statutes . . . reflect the legislature's strong policy in favor of payment of wages to employees." *Jumamil v. Lakeside Casino, LLC*, 179 Wn. App. 665, 682, 319 P.3d 868 (2014). Although Allen may have another cause of action pursuant to RCW 49.56.010, this fact does not negate his cause of action under the WRA. There are many reasons why an employee may choose to sue an individual officer instead of the trustee of the employer's bankruptcy proceedings, chief among them an organization's financial insolvency, e.g., insufficient funds to satisfy wage claims. In such

10

We decline to allow responsible officers, principals, and agents to circumvent the legislature's intent that employees receive all the wages owed to them simply because the previously established payday date for wages occurs after a chapter 7 filing.[12] The purpose of the WRA is clear; it is

> "primarily a protective measure . . . [with] the aim or purpose . . . to see that the employee shall realize the full amount of the wages . . . he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages."

*Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998) (quoting *State v. Carter*, 18 Wn.2d 590, 621, 140 P.2d 298, 142 P.2d 403 (1943)). In simpler terms, the WRA "must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment."[13] *Id.* Therefore, in circumstances of chapter 7 bankruptcy, we look to whether the employer or officer, vice principal, or agent withheld

---

circumstances, the legislature has created a remedy via the WRA, allowing employees to recover their wages from the individual officers, vice principals, or agents of the employer.

[12] The defendants also argue that the wages implicated by the certified questions are limited, comprising at most one month, implying that an employee's recovery of wages in these circumstances is somehow less important. *See* WAC 296-126-023(c) (requiring wages in Washington be paid at least monthly). However, this argument neglects that the WRA is part of "a comprehensive legislative system with respect to wages indicat[ing] a strong legislative intent to assure payment to employees of wages they have earned." *Schilling*, 136 Wn.2d at 159. Under the statute, it does not matter whether the wages withheld are for one day's or one month's work. In passing the WRA, the legislature intended to allow employees to recover *all* the wages they have earned. *See id.*

[13] The concurring opinion asserts that the mental element of the WRA is not subject to a liberal construction because it is not ambiguous and because it is a criminal statute. No party argues that the mental element of the WRA should be given a narrow construction. Instead, the defendants assert that they lacked the necessary control over wages to be held liable as an officer, vice principal, or agent. As a result, we do not comment here on the proper construction of the mental element of the WRA.

11

their employees' earned wages "when [the company] entered chapter 7 liquidation" instead of on the established payday date. *Morgan*, 166 Wn.2d at 535 n.1.

B.      *Ellerman* Exempted Low-Level Managers and Supervisors from Liability under the WRA Because They Lack Control over the Decision To Pay Wages

Our decision in *Ellerman*, on which the defendants rely, does not cut off the liability of officers, vice principals, or agents upon the filing for bankruptcy. Instead, our discussion of control in *Ellerman* exempted low-level managers and supervisors from liability under the WRA, as our decision in *Morgan* confirms.

In *Ellerman*, we were asked whether a business manager had sufficient control over the payment of wages to be held liable under the WRA. *Ellerman*, 143 Wn.2d at 519. Since the terms "vice principal" and "agent" are not defined in the WRA, they are given their common law meanings in which they could encompass a manager or supervisor. *Id.* at 521-22. However, in *Ellerman*, we declined to hold the business manager liable under the WRA. *Id.* at 523. After explaining that the manager lacked control over the payment of wages and the legislature "intended to impose personal liability on only [individuals] who directly supervise or control the payment of wages," we concluded the manager was not liable under the WRA. *Id.* 521-22.

In *Morgan*, we distinguished the *Morgan* officers from the *Ellerman* manager. *Morgan*, 166 Wn.2d at 536. In *Morgan*, it was clear that the officers "both had authority over the payment of wages." *Id.* We went on to note that "the wages owed were accrued prior to the chapter 7 conversion"[14] and that the "legislature intended . . . to impose

---

[14] The amicus brief of Washington Employment Lawyers Association discusses at length the issue of when Allen's wages accrued, claiming that it is the only way that *Morgan* can be distinguished from the present case. The issue of wage accrual appears to be a heavily fact-dependent inquiry,

personal liability on the officers in cases like this because the officers control the financial decisions of the corporation." *Id.* Therefore, we rejected the officers' lack of control argument, declaring "bankruptcy of the corporation is not a means to escape personal liability by those who failed to pay wages owed." *Id.*

Acknowledging that this language in *Morgan* supports Allen's position, the defendants attempt to distinguish it on the basis that in *Morgan* we decided "whether financial status, specifically bankruptcy under chapter 7 liquidation, is a valid defense to negate the finding of a *willful failure to pay wages* owed to employees." *Id.* at 531 (emphasis added). The defendants argue that *Morgan*'s holding is limited to the second element under the WRA, willfulness, since the court framed the question as one dealing with the element of willfulness. The defendants therefore assert that the court's language in *Morgan* clarifying why the WRA requires an officer to have control over the payment of wages is dicta and not binding. Rather, they argue that *Ellerman*'s holding precludes a finding of personal liability since they lacked control over the payment of wages after the chapter 7 bankruptcy filing took place.

The defendants' argument attempts to isolate both the *Ellerman* and *Morgan* holdings and ignores the language of the WRA. Before the court can reach the question of whether the withholding of wages was willful under the WRA, it must first determine if an individual qualifies as a member of the class of individuals designated as potentially liable under the statute. *See* RCW 49.52.050 (requiring an individual to be an "officer,

---

and as the case is on a motion for summary judgment, the district court has yet to weigh in on these issues. In addition, this would be a superficial way for the court to distinguish *Morgan*, given its language that directly addresses the main issues contested here. As a result, the court need not and does not address the question about when Allen's wages accrued.

13

vice principal, or agent" and a willful withholding of wages to establish liability). The *Morgan* court concluded that the officers held the necessary control to qualify as officers under the WRA, despite the fact that the casino's status had been converted into a chapter 7 bankruptcy. *See Morgan,* 166 Wn.2d at 536. As a result, the court's language rejecting the officers' argument that "the failure to pay the[] wages was beyond their control" was not dicta, but a necessary first step in the court's analysis. *Id.* at 535. Consequently, our analysis in *Morgan* controls. The defendants make the same argument the officers in *Morgan* made, namely that they lacked control over the payment of wages and therefore cannot be held liable under the WRA. We once again reject the argument that the filing of chapter 7 bankruptcy precludes holding an officer, vice principal, or agent personally liable under the WRA.

III.     An Officer, Vice Principal, or Agent's Participation in the Decision To File the Chapter 7 Bankruptcy Petition Tends To Show a Willful Withholding of Wages

We also answer the second certified question in the affirmative. An officer's participation in the decision to file the chapter 7 bankruptcy petition, where this decision effectively terminated the officer's employment and thus the ability to control payment decisions, makes it more likely that an officer may be held liable under the WRA because it shows willfulness, the second element required by the WRA.

To succeed in an action under the WRA, a claimant must show both (1) the individual being sued is an officer, vice principal, or agent of the claimant's employer who has control over the payment of wages and (2) the individual willfully withheld the claimant's wages. *See* RCW 49.52.050; *see also Ellerman*, 143 Wn.2d at 523. We read the district court's second question as one dealing with the second element of the WRA—

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

willfulness. We hold that an officer's participation in the decision to file the chapter 7 bankruptcy petition alters the WRA analysis because it tends to show willfulness on the part of the officer.

In *Schilling*, we discussed the element of willfulness under the WRA. We held that the "nonpayment of wages is willful 'when it is the result of a knowing and intentional action.'" *Schilling*, 136 Wn.2d at 160 (quoting *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659, 717 P.2d 1371 (1986)). We further explained that "there are two instances when an employer's failure to pay wages is not willful: . . . 'either by a finding of carelessness or by the existence of a bona fide dispute.'" *Id.* (quoting *Pope v. Univ. of Wash.*, 121 Wn.2d 479, 491 n.4, 852 P.2d 1055, 871 P.2d 590 (1993)). "[C]arelessness . . . suggests errors in bookkeeping or other conduct of an accidental character," and a bona fide dispute exists when there is "a 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Id.* at 161 (citing *Brandt v. Impero*, 1 Wn. App. 678, 680-81, 463 P.2d 197 (1969)). In *Schilling*, we specifically rejected a "financial inability to pay" exception to the WRA, concluding that an officer's failure to pay was willful under the WRA in circumstances where the corporation lacked sufficient funds to pay wages.[15] *Id.* at 164-66.

---

[15] The concurring opinion argues that the court cannot reject a "'financial inability to pay'" defense to criminal liability under the WRA. Concurrence at 4. The WRA creates criminal liability and provides a civil remedy when an employer willfully withholds wages. This case is about the civil remedy available under the WRA. The criminal aspect of the statute was not briefed by the parties and is not before us.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We also discussed the element of willfulness under the WRA in *Morgan*.166 Wn.2d at 536-37. There, we reasoned that officers, vice principals, or agents should be held liable under the WRA for their willful decisions that impact the payment of wages:

> The legislature intended . . . to impose personal liability on the officers in cases like this because the officers control the financial decisions of the corporation. There are many examples that highlight the need for such risk of personal liability. The officers decide whether to pay one debt over another (e.g., wages). The officers have the choice to file bankruptcy or, say, close the business and pay its debts (including wages). The officers decide whether to continue running an inadequately capitalized corporation while hoping for a change in financial position.

*Id.* The WRA imposes personal liability on an officer for such decisions because "the officers control the choices over how the corporation's money is used." *Id.* at 537. And all of these decisions constitute willful action taken under the WRA.

Contrary to the defendants' assertions, we do not subject any business decision to potential liability under the WRA. As discussed above, *Morgan* already held that individuals may be held liable under the WRA in circumstances of chapter 7 bankruptcy. The defendants offer no evidence that *Morgan* resulted in a business environment where management prematurely leaves corporations in financial distress. Rather, this decision is consistent with our reasoning in *Schilling* and *Morgan*. The defendants do not argue a recognized exception to the willfulness element of the WRA as discussed in *Schilling*. Instead, they say they lacked control. However, the defendants misapprehend when having control is critical in circumstances of bankruptcy. As discussed above, we are most concerned about whether the wages that employees have earned were withheld. A bankruptcy does not excuse the willfulness of an individual's exercise of his or her control to not pay wages, especially in circumstances where the decision to file for

16

chapter 7 bankruptcy is controlled by the individual exercising control over wages. *See id.* at 536 (concluding "bankruptcy of the corporation is not a means to escape personal liability by those who failed to pay wages owed").

Here, the defendants chose to retain Allen, chose when to file for bankruptcy, and, most importantly, chose to withhold his wages. Unlike the business manager in *Ellerman*, the defendants had full control over the decision to pay wages up until they chose to file for chapter 7 bankruptcy. Then, the defendants chose to put further payment of employee wages beyond their control by filing a chapter 7 bankruptcy petition. In addition, the defendants chose to pay insurance costs with company funds before they paid employee wages in full. The defendants' decision to put the payment of employee wages beyond their control by filing a chapter 7 petition tends to show their willful withholding of wages under the WRA. As a result, individuals like the defendants may be held liable for their decision not to pay wages accordingly.

CONCLUSION

We reject the defendants' invitation to reformulate the certified questions. We answer both certified questions in the affirmative. First, we hold that an officer, vice principal, or agent may be held liable under the WRA when his or her employment was terminated due to chapter 7 bankruptcy and the payday date for wages owed came after the filing for chapter 7 bankruptcy. This conclusion reflects our holdings in both *Ellerman* and *Morgan*. And, in these circumstances, we consider whether the earned wages were withheld on the date when the individuals chose to file for chapter 7 bankruptcy, rather than on the established payday date if such a date came after the chapter 7 filing.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, we hold that an officer, vice principal, or agent's participation in the decision to file the chapter 7 bankruptcy petition tends to show a willful withholding of wages under the WRA. We recognize that the legislature intended to hold individuals liable in these circumstances because of the control they exercise over payment decisions. Having answered the certified questions in the affirmative, we remand the case to the district court for proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2

_____ Wiggins, J.

WE CONCUR.

Madsen, J. _____   Stephens, J. _____

_____   _____

_____   _____

Fairhurst, C.J. _____   Yu, J. _____

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2
(Gordon McCloud, J., concurring)

No. 93056-2

GORDON McCLOUD, J. (concurring)—I agree with the majority's answer

to the certified questions, but I write separately to emphasize the limits of those

holdings.

The first certified question asks whether "an officer, vice principal, or agent

of an employer [is] liable for a deprivation of wages under RCW 49.52.050 when

his or her employment with the employer (and his or her ability to control the

payment decision) was terminated before the wages became due and owing." Order

Vacating J. & Certifying Questions to Wash. Supreme Ct. (Order), *Allen v.*

*Dameron*, No. C14-1263RSL, at 3-4 (W.D. Wash. Apr. 28, 2016). The majority

says that the answer is yes because (1) those entities are listed as potential defendants

in the cited statute and (2) termination of those entities' employment prior to their

payday does not insulate them from liability. Majority at 8-11. It concludes that this

means that such entities "*may* be held personally liable under the WRA [(wage rebate

act), RCW 49.52.050]." *Id.* at 2 (emphasis added). I agree.

I write separately to clarify that "may" means "may." The other prerequisites

to WRA liability must still be met before such liability can attach. Specifically,

1

*Allen v. Dameron IV et al.*, No. 93056-2
(Gordon McCloud, J., concurring)

plaintiffs must still prove the statute's mental element: that the deprivation of wages was done "[w]illfully and with intent to deprive." RCW 49.52.050(2).

The majority is generally correct that the WRA must be liberally construed to advance the legislative purpose "'to protect employee wages and assure payment.'" Majority at 11 (quoting *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998)). But this mental element of the statute we are construing today— RCW 49.52.050(2)—is not subject to a liberal construction for two reasons.

First, RCW 49.52.050(2) is not ambiguous. The legislature clearly and expressly included within that statute the mental element of "[w]illful[ness] and . . . intent to deprive." RCW 49.52.050(2). When a statute contains such an explicit mens rea requirement, the courts must enforce it.

Second, RCW 49.52.050(2) is a criminal statute. It states that any covered person who commits any act listed in subsections (1)-(5) "[s]hall be guilty of a misdemeanor." RCW 49.52.050. Thus, even if it were ambiguous, it would subject to a strict, not a liberal, construction.[1]

---

[1] The fact that the plaintiffs in this case seek a civil remedy does not change that. RCW 49.52.070 provides a civil remedy to employees who are victimized by the willful and intentional deprivation of wages criminalized by RCW 49.52.050(2). But it is still the meaning of RCW 49.52.050(2) that we were asked to interpret. And because that statute has criminal applications, we must apply the same interpretive rules to the mens rea in that statute that we apply when interpreting other criminal statutes. *See United States v.*

I therefore agree with the majority's answer that the entities listed in the first question, which are the same as the entities listed as potential defendants in RCW 49.52.050, "may" be held liable. But the plaintiffs in this case must still prove the other prerequisites to WRA liability, including willfulness and intent, in order to prevail.

The second certified question asks whether a defendant's "participation in the decision to file the Chapter 7 bankruptcy petition that effectively terminated his or her employment and ability to control payment decisions alter[s] the analysis" and, "[i]f so, how." Order at 3-4. Once again, the majority correctly answers in the affirmative and explains that, in the context of the record we have been supplied with in this case, "an officer's participation in the decision to file the chapter 7 bankruptcy petition alters the WRA analysis because it tends to show willfulness on the part of the officer." Majority at 15.

The majority does, however, go on to state that we have "specifically rejected a 'financial inability to pay' exception to the WRA." *Id.* (quoting *Schilling*, 136

---

*Thompson/Center Arms Co.*, 504 U.S. 505, 518 n.10, 112 S. Ct. 2101, 119 L. Ed. 2d 308 (1992) (plurality opinion) (rules of statutory construction applicable to criminal statute—here, rule of lenity—applies to a tax statute with both civil and criminal applications); *id.* at 519 (Scalia, J., concurring in judgment) (expressly agreeing with the plurality's application of that interpretive rule).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2
(Gordon McCloud, J., concurring)

Wn.2d at 164-66); *see also id.* at 16 (quoting *Morgan v. Kingen*, 166 Wn.2d 526, 536-37, 210 P.3d 995 (2009)).

Once again, I write to emphasize my understanding that this is a holding limited to the particular facts presented here. Indeed, the majority could not completely reject a "financial inability to pay" defense to criminal liability without contradicting controlling United States Supreme Court precedent. *Bearden v. Georgia*, 461 U.S. 660, 672-73, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983) (revoking probation for nonwillful failure to pay fine "would be contrary to the fundamental fairness required by the Fourteenth Amendment [to the federal constitution]"). Thus, despite some broad statements in the majority (and in the *Schilling* and *Morgan* decisions on which it relies) about financial inability to pay being irrelevant to criminal consequences, I take the majority's actual holding as far more narrow. It is a holding about timing:

> [D]efendants . . . say they lacked control. However, the defendants misapprehend when having control is critical in circumstances of bankruptcy. . . . A bankruptcy does not excuse the willfulness of an individual's exercise of his or her control to not pay wages, especially in circumstances where the decision to file for chapter 7 bankruptcy is controlled by the individual exercising control over wages.

Majority at 16-17.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2
(Gordon McCloud, J., concurring)

To the extent the majority opines that the defendants' decisions to file a chapter 7 bankruptcy petition supports an inference of willfulness, I read that as a holding based on the facts of this case. Specifically, as the majority explains, "the defendants chose to retain Allen, chose when to file for bankruptcy, and, most importantly, chose to withhold his wages." *Id.* at 17.

> [T]he defendants had full control over the decision to pay wages up until they chose to file for chapter 7 bankruptcy. Then, the defendants chose to put further payment of employee wages beyond their control by filing a chapter 7 bankruptcy petition. In addition, the defendants chose to pay insurance costs with company funds before they paid employee wages in full.

*Id.* Given these specific facts, I completely agree with the majority's conclusion that "defendants' decision to put the payment of employee wages beyond their control by filing a chapter 7 petition tends to show their willful withholding of wages under the WRA." *Id.*

With these observations about the limits of the majority's holding, I concur.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Allen v. Dameron IV et al.*, No. 93056-2
(Gordon McCloud, J., concurring)

Gordon McCloud, J.

González, J.